The facts of this case are clear and the case law compelling from the 5th Circuit. The core issue, as the appellant Mr. Casillas sees it, is that there was a clear breach of a plea agreement that he entered into with the government concerning a role reduction prior to his sentencing hearings. The Grandinetti case is one that the Court brought to my attention. I did not have it originally in my brief to the Court. I find that case clear and compelling and the facts and the reasoning in that case controlling on the issues here today. That core issue, again, being whether or not the government breached its plea agreement with Mr. Casillas. Mr. Casillas' case is interesting in that he had gone to trial – well, actually, he had prepared to go to trial and then went to a plea hearing and then a sentencing hearing – twice. The first time, a new group of prosecutors came in, did not advocate the role reduction. He was sentenced harshly to 222 months in prison. The government on appeal confessed that it had not abided by its plea agreement. The second time he went back to court with a different attorney and with the original prosecutor for the government who had sponsored the plea agreement, he once again did not receive the benefits of his plea reduction, which would allow Mr. Casillas to then qualify for the safety valve provisions and therefore be sentenced below the mandatory minimum threshold of 10 years. The prosecutor informed the Court that after the plea agreement was originally reached, that the government had found out new information about Mr. Casillas and that they no longer – the government no longer believed that he was a minor participant or deserved a minimal role recommendation. That doesn't the government have a continuing ethical obligation to present to the Court all the relevant facts? It's – it does, Your Honor, upon questioning by the Court. It was not – the government was not questioned by the Court. Those were gratuitous statements made by the prosecutor. So you're saying the answer is no, if the Court hasn't inquired about it, the government does not have an ethical obligation to come forward with significant relevant facts? Yes, Your Honor. The primary ethical obligation here was to support its contractual agreement in the role reduction that was sponsored within the plea supplement to the plea agreement. Okay. And I mean, it sounds like – I don't mean to be giving you a hard time, but I want to be sure what your answer is. So your answer is that there's no independent and separate ethical obligation on the government, even if it's a fact that's obviously relevant, to present it to the Court unless asked? That's correct, Your Honor. Did you say you were a former prosecutor? Yes, ma'am. Well, doesn't a prosecutor or a defense attorney or any officer of the Court have the duty to correct a misstatement, to inform the Court of correct facts, such as this guy was the supplier of the – of the source of the drugs, as opposed to just someone who had a more de minimis role? The ethical obligation of a prosecutor is always, in any officer of the Court, is always to be completely candid to the Court with any questions the Court may ask it. However, the precedent of this Fifth Circuit is that prosecutors cannot make gratuitous statements in abrogation or in deference to the plea agreement they had reached with a defendant. In this case – What would be gratuitous to correct the record? The – the ethical obligation – I'm sorry. I don't understand where you're coming from. The ethical obligation here was for the prosecutor to support his recommendation for a role reduction. But the role reduction was based on an erroneous fact. So that would be misrepresenting the facts to the Court, misleading the Court, I would think. The – the answer to that is the prosecutor prior to any hearing, such as this case, the sentencing hearing, if he – if the prosecutor had learned new information concerning the defendant, the options of the government at that point was to withdraw the plea agreement and take – and offer another plea agreement based upon the new facts or take the defendant to trial. The ethical duty of the prosecutor was not to go to court and then support something different than its promises to the defendant. That's what happened here. Well, there is case law or statement, or there are random statements in a lot of cases, I guess, that the prosecutor is not required enthusiastically to support the plea agreement. It seems to me there are a number of different obligations going on here. There was a presentation of the plea agreement, no withdrawal of it, no statement that – that the prosecution thought there was no longer – should be honored by the judge, and then explain the facts as they knew them at the time. You said there was another option before the hearing. It seems like this was an option as well, to be candid with the Court as is required by any lawyer, as well as presenting the plea agreement and saying it's still supported. I don't know where the line is here, but it's a difficult line. Are you saying that any negative information from the prosecutor that was not understood at the time has to be either withheld or the plea agreement withdrawn, or is it a matter of degree? Was it the seriousness of what was the new information that creates the problem? Because we are looking at a fairly difficult situation here. When is effectively the government no longer supporting the plea agreement, and when is it just providing other information? The issue that the Court brings up is well taken. I think if we look at your decision in Saling, you'll see there where the prosecutor, during the – during the sentencing hearing, had obtained information after the plea agreement and gratuitously provided that information to the Court, the same has happened here with Mr. Casillas. The Court in Saling ruled that, in fact, that was a breach of the plea agreement. You can also look at Harper, Your Honor. In Harper, it went a little bit farther, where the prosecutor was actually – became an advocate for the PSR guideline sentencing range, which was in direct opposition to what the plea agreement called for. So looking at Saling and Harper, in those cases, those two together, combined with Grandinetti expressing reservations, all three of those things occurred here with the government and Mr. Casillas' sentencing. In the Munoz case, which was cited in the government's brief, this was Fifth Circuit 2005, our Court said that there's a prosecutorial, this is a quote, duty to provide the sentencing court with relevant factual information and to correct misstatements. What use should we make of that case? I think that duty does exist, Your Honor, but I think the primary duty, if the government has agreed to make a recommendation to the court for sentencing, that the government stand by that recommendation. Well, stand by it, I would say. I would imagine Mr. Cleveland would tell us that they did stand by it. They just provided additional information. This is a – you were saying earlier, it seems to me, that you almost had taken the position that if something like this is going to be presented to the district court, learned after the fact, no bad faith or whatever, learned after the fact, that the government has to go to the defendant and say, we are withdrawing our agreement. Is that where you stand? Otherwise, the court can't be told about all this? That would be, according to the case law, that would be the prosecutor's option prior to the sentencing hearing. If the government finds out information that they believe – it's like, it's a contractual agreement, obviously, the plea agreement. If the government believes that the defendant, in this case Mr. Casillas, had in fact violated that plea agreement by not being truthful, not coming forward, and not telling the government everything about himself, and therefore not qualifying for a minimal role but actually playing a much larger role, then the government at that point in time when they found out that information could have said that Mr. Casillas violated the plea agreement and withdrawn it and taken him to trial or offered him a different plea based upon the new information. The critical element for the court here is to review the case under the factual scenarios presented to the court within the record, is that the breach of the plea agreement is through the eyes of Mr. Casillas, the defendant. What were his reasonable expectations? His reasonable expectations were that even if the prosecutor was candid with any questions from the court, the prosecutor would still, in this case the government, would still stand by its recommendations. So even if the court had inquired and the government responded about his increased role, the government still should have advocated that he in fact deserved a role reduction in the government's opinion. Instead, the opposite happened. The prosecutor informed the court that it did not believe he played a minor role. In fact, it went even farther by sponsoring a DEA agent to put on testimony showing what larger role Mr. Casillas had actually played. Based upon that information to the court, the judge sentenced him by denying a minor role and by denying him the safety valve. It is not the prosecutor's position to support a probation officer's recommendation or analysis of the case. The probation officer is an officer of the court and is allowed even ex parte communication with the sentencing court. The prosecutor, the government, is a separate, distinct entity and should not have involved himself in this case with supporting the harsher recommendations of the PSR. The prosecutor should have stood by his original recommendation based on Mr. Casillas' expectations that he would receive a minor role reduction, that he would qualify for safety valve and be sentenced to a much less harsh sentence. That's the standard in the rulings of the cases under Randinetti, Saling and Harper. Wasn't there something specific in this plea agreement that reserved the government's right to inform the court of all relevant facts? Wasn't that in the plea agreement? No, not that I recall, Your Honor. It was not. It was, if you look back at the original entry of plea when Mr. Casillas was in court, there were statements made by the prosecutor that they would be making a role reduction recommendation to the judge when he entered his guilty plea. And Judge Oserton asked Mr. Casillas specifically, are you entering your plea based upon those recommendations by the government as a minor role recommendation? And Mr. Casillas said, yes, that's exactly why he was entering his plea. What Judge Smith was talking about in the plea agreement was the line that the government had the right to advise the district court of the nature and extent of Casillas' defendant's activities with respect to this case and all other of his activities which the U.S. attorney learns and deems relevant to sentencing. Does that change the calculus? Was I mumbling? Did you hear what I was reading? Yes. No, that goes back to the candor to the court, to advise the court if the court inquires into any further detail. But I don't disagree with any of that. I'm not being argumentative with the court. All I'm saying is that the primary duty of the prosecutor, the government here, was under Grandinetti, Saling, and Harper, not to express reservations, not to provide any information obtained after the plea agreement unless the court specifically inquired, and certainly not to be an advocate for the PSR guidelines that were not in accordance with the original plea agreement. All right. Thank you, Mr. Halliday. You've saved time for rebuttal. Yes, sir. Thank you. Mr. Cleveland?  Obviously, the prosecutor went further than some of the case law would seem to permit. What we have is a minor role reduction. And yet, once there, the government firmly says he did not have a minor role. He was a significant player. I'm not saying that you had an ethical obligation to hide all of it. You could hide that information from the judge. What about this other option? Can you go into court on a plea agreement where you have agreed to make this recommendation, then in all effects and purposes withdrawing that recommendation when you're talking to the judge? What about pre-sentencing? Is that really an option? Does it go back to the defendant and say, we can no longer stand by this minor role? Your Honor, it's just that this is an unusual case in that it was before the court following a voluntary remand by the government so that the defendant could get the benefit of a prosecutor standing before the court and making the role recommendation. The judge accepted that the government was making that recommendation. Defense counsel accepted the government was making that recommendation. The defendant was pleased with the result because he got a significantly lesser sentence on remand. The prosecutor in this case did get up and, in addition to what was in the pre-sentence report which incorporated the recommendation in the plea agreement, he probably could have just got up and said, we're going along with what's in the plea agreement. He didn't do that. He gave the judge more information. In a way, he was — I would say it was gratuitous. I wish he hadn't said it. I don't think it hurt anything, because he didn't tell the judge anything that the judge didn't already know, because the judge had heard it. What are you saying was — I'm sorry, Mr. Cleveland. What are you saying was gratuitous? You agree that it was gratuitous? I think that it was unnecessary in the context because the judge already knew this information. What specific statement do you think was unnecessary? I don't think the judge — I don't think the prosecutor needed to say anything more than we follow — we make the recommendation that's in the plea agreement for role reduction. But he didn't then, when he went beyond that, tell the judge anything that he didn't know. He — the prosecutor did give the background of the plea negotiations, as Mr. Halliday said in his brief. And that really was not necessary. I'm not — but the key point I'm going to make is that the judge didn't regard the government as disavowing the plea agreement. The defense lawyer didn't regard the government as disavowing the plea agreement. Why do you say that? Because there was no objection? There was no — absolutely. Is that why you're saying that the defense attorney did not consider it to be a violation just because there was no objection? He — the defense lawyer said that the government has conceded and confessed the defendant's role. That was record at 277. It ought to carry a lot of weight that the United States is willing to admit that his role was less. That's record at 279. And the judge, at the end of the day, said the government has stood by the recommendation. That's record at 293. So, now, Mr. Halliday points out that the government did sponsor a witness. Well, that witness went to the issue of the safety valve. The government didn't make any argument about the role reduction based on the testimony, which the Court accepted for that very limited purpose. So — and, of course, as I indicated, Judge Ozerden was already aware of the testimony from the first sentencing. Nonetheless, this defendant chose to go back before the same judge on remand. He chose to stick with Judge Ozerden. The government chose to stick with its recommendation of a lower — of a reduced role. And the judge chose not to follow that recommendation. The government didn't disavow the recommendation. And Mr. Halliday says that the defendant didn't get the benefit of his — of the plea, but the government was not obligated to guarantee that the defendant was going to get a role reduction. The government was obligated to make a recommendation. Some judges were willing to take the recommendation of the prosecutor and negotiate its settlement between the parties. And that's all that they really want to know about. Now, this defense lawyer — this was the ultimate result, which was that the judge downwardly departed some 60 months, even though the judge made an adverse finding on the — on the role reduction. So what we have is — is the — the — it was cited in the plea — in the presentence report addendum. There's an addendum that accompanied this second sentencing on remand that we hear about today. And here's what the probation officer said. During the first sentencing, defense counsel contended that Casillas was unaware the meth was imported, which prompted the prosecutor to sponsor a witness from the — the case agent that a cell phone found on Casillas was determined to contain text messages indicating communication with the source of supply in Mexico. That's record at 378. That was from the first hearing. The judge was already aware of that situation, and that was not the product of anybody advocating on — on the — on the role reduction issue. That was on addressing the importation issue, which Casillas' lawyer disputed in the first hearing. So at no point did the government advocate any position other than what was agreed in the plea agreements. Your Honor, this Court has drawn a distinction between when the prosecutor crosses the line to breach by affirmatively advocating a position contrary to the plea agreement. That's in this Court's decision in Pizzolatto, which we quote in our brief at 22. And in the Losi-Gracia opinion authored by Judge Clement, the Court said a plea agreement is breached when the government agrees to one thing as the plea, but then actively advocates for something different in sentencing. We quote that in our brief at 9. Are there different forms of advocacy, putting on evidence that is unnecessary, making statements that are unnecessary, that undermine the thrust of the plea agreement? Isn't that arguably advocacy? It's not what the prosecutor said, and that's not what the government — that's not what the judge accepted the government was saying. That's not what the defense lawyer accepted the government was saying. They think that the — it was accepted as being some background and context for what had happened. And as I say, it's a very unusual situation in that this was back before the same judge on remand, and the judge having heard a lot of information. I think the prosecutor was just acknowledging the reality of the situation, but he was not backing away from the recommendation, never did back away from the recommendation. The judge said he stood by the recommendation. And, of course, it was incorporated in the pre-sentence report that it was a nonbinding recommendation. Now, that all just goes to whether there was any kind of error in this situation that needed to be corrected. And then we don't even — now we get to move on because nobody had ever objected to the fact that he can't show any — anything adverse to his substantial rights. There's no impact. So back, though, to the first point, you gave us a thorough letter as requested on the Grandinetti case, and you indicated that you thought the law had changed since Grandinetti. Obviously, that's a case that's 40 years old, so it's been around a while. But I don't quite understand your contention that the law has changed as it affects this case since Grandinetti was announced. Judge Smith, the — the significant changes in the law are that since Grandinetti, you had the Benchamol decision from the Supreme Court, which said that the prosecutor does not have to make an enthusiastic recommendation. The prosecutor just has to make a recommendation. That decision came after Grandinetti and, therefore, was — is — represents a change in the law. Of course, in the — in the Grandinetti case itself, the prosecutor said there was — there were very serious problems with the recommendation, maybe even problems with legality or propriety of the recommendation. It was not the recommendation of the prosecutor who was before the Court at sentencing. It was a different prosecutor. It was a little bit like — Roberts. I'm just asking you about how the law has changed, not about the other aspects of Grandinetti. The other — the other key, key change is Grandinetti was decided in the context where if the government were to breach, that would almost be the end of the story. This case arises in the plain-error context. And the Puckett decision from the Supreme Court is obviously the key decision in the intervening years laying out that plain-error review does, in fact, apply to the — in the context of breach. So we — we think that that does apply here, and it's really the key distinction with — with Grandinetti. And that is a case that does say that there has to be a showing of an adverse impact on substantial rights. And to prevail, as Your Honor, Justice Breyer said in the Hebron case, the prosecutor must show that but for the error, he would have received a lesser sentence. And that's also in line with the — the Ina Hossa decision, Judge Shaltz had authored, which we cited, our brief at page 27. There's no basis to conclude that the district court would have imposed any different sentence, regardless of what the government said. And that's similar to the Pizzolatto decision by the court, that the district court made the decision in its sole discretion based on its independent assessment, and that's in our brief at 22. So Judge Oserden had already decided — denied the caseus a role adjustment when the case was before him the first time. And the judge said caseus was at least as heavily involved as his co-defendant, if not more so, and was in contact with the Mexican supplier. That's record at 235. And on — on remand, Judge Oserden said that his finding cannot be based solely on a recommendation in the plea agreement when there are other facts out there that may be contrary to the government's recommendation. That's record at 295. So even so, Judge Oserden downwardly departed in caseus' favor on remand, reducing his sentence more than 60 months below the original sentence that he'd imposed. And the judge said he would have imposed the same sentence, regardless of the guidelines. That's record at 306. So there's no reason to conclude the result would have been any different, regardless of what the government had to say. And then finally, under plain error view, you get to the fact that this is not the rare case we would submit for this Court to exercise its discretion, as in the Hebron decision. The Court varied downward in the defendant's favor. And of course, here, the judge said he would impose the same sentence, irrespective of the guidelines. And that's record at 306. So Judge Oserden made his own candid assessment of the facts and what the government had to say, added very little, if anything, to the picture. For all these reasons, Your Honors, I ask that this Court enforce the plea agreement, the appeal waiver, and dismiss the appeal. Mr. Cleaven, remind me, who was the AUSA at the second sentencing? He had the — he was the agent — I mean, the AUSA responsible for the case. In both of the hearings, he didn't attend the first hearings, John Minority, who's head of our narcotics prosecution. Thank you. Just — just curious, how many Fifth Circuit arguments have you made now, Mr. Cleaven? Maybe a dozen and a half, I think. Okay. I knew we'd — Before you were on beforehand. It's always a pleasure. You say a dozen and a half? Yes. Procedurally, you say, if you're correct, if there was no breach of the plea agreement, you said dismiss the appeal. Is that rather than affirming the sentence? Yes. It would be in line with what the Court did earlier this week with another case, I think, authored by Your Honor, where the Court determined that the — that the plea agreement could be enforced, the appeal waiver could be granted, and that the case dismissed. Okay. Thank you. All right. Thank you, Mr. Cleaven. Mr. Aldate, you say time for rebuttal. The test, Your Honors, is not what the judge did or did not do, or what the prosecutor thought or may have thought, or what his intentions were. The core issue here before the Court is whether there was a breach of the plea agreement. And certainly, Mr. Cleaven points out that there were no adverse effects, which is one of the requirements under the Plain-Era Doctrine. Well, the adverse effects were clear. Mr. Casillas was sentenced to 160 months, when if he qualified for a minor role participant and, therefore, qualified for safety bail with no prior criminal history, he would have received approximately 113 months. So that's 13.3 years versus 9.4 years. That's 3 years and 11 months difference. That was the average. How do we factor in — I'm sorry. Yes, sir. How do we factor in Judge Ozerton's statements that Mr. Cleaven just mentioned, that he would have given the same sentence, irregardless? The bell had already been rung. It's impossible for any judge, even outstanding jurists like Judge Ozerton, not to hear Mr. Casillas was not a minor participant, and not to hear the prosecutor himself tell Judge Ozerton that they — that he, the prosecutor, no longer — the government believed that Mr. Casillas was a minor participant, but played a much larger role. Both of them rang that bell, and that caused the Court to focus. But that's not the test. The test from this circuit is, under Grandinelli, if the prosecutor expects reservations that are contrary to the plea agreement, then the case must be remanded back. The judgment overturned, a new sentencing hearing held in front of a different judge, and the government required to specifically stand by its plea agreement. The test under Saling, that was a 2000 case in which information obtained after the plea agreement was reached was provided to the Court. The Court there overturned that judgment, remanded it back for sentencing in accordance with the plea agreement in front of a different judge. And then Harper, in 2011, a decision from this circuit, was where the prosecutor advocated for the PSR guideline range, which is what happened here when the government sponsored a witness which supported the harsher view in the PSR from what the plea agreement called for, which was a minor role. Under the precedent of this circuit, this case must be overturned. The judgment vacated, returned back to district court in front of a different judge, and the government required to enforce its plea agreement. All right. Thank you, Mr. Halliday. Thank you, Justice. As you indicated, you're court-appointed, and we wish to thank you for your good service. You've done a good job in the face of tough questioning from the Court. You've done a good job as an advocate for your client. We appreciate your willingness to take the appointment. I felt I was a very poor vessel to carry the water here today, Your Honor, but especially against my childhood friend, Mr. Cleveland, and I'm honored that you would say that to me. Thank you, Judge Southwick and Judge Clement. Thank you.